RHODE ISLAND HOSPITAL TRUST Co. *et al vs.*
JOHN H. TUCKER *et al.*

MAY 20, 1932.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock and Hahn, JJ.

RATHBUN, J. After the filing of our opinion, see 51 R. I. 507, the life tenants filed a motion for reargument, and thereafter the motion was granted by rescript substantially

as follows: "The motion suggests that the court, in view of its decision, should have advised the trustee relative to its duty to the life tenants in respect to stocks held by the trustee in corporations declaring regular stock dividends, and, particularly, in respect to stocks in corporations which declare such dividends and declare no cash dividends; and should have advised the trustee that, there being no specific testamentary declaration to the contrary, it was the duty of the trustee to convert trust assets into securities or property which will yield the highest income consistent with safety of principal.

"First, the trustee did not specifically ask for instruction in this particular; second, that question was not argued by counsel, nor discussed in their briefs. However, by reason of the importance of the question, and because of the expense and loss of time involved in bringing a new bill, we are willing to treat the question as one proper for our consideration under the prayer for general relief.

"In this particular, the motion for reargument is granted."

Among the securities received by the trustee were shares of common stock in the North American Company and similar shares in the Middle West Utilities Company. Each company distributes regular stock dividends, and neither pays any cash dividends. The testatrix deceased July 28, 1928. The trustee received as a part of the trust estate one hundred shares of the North American Company and, on or about September 26, 1929, sold fifty of said shares for $8,423.

We are requested to advise the trustee as to the relative rights of the life tenants and the remaindermen in this fund and also to advise whether it is the duty of the trustee to sell the shares now held in said company and in the Middle West Utilities Company and, if so, to advise as to the relative rights of life tenants and remaindermen in the proceeds of such sales.

Unless clearly directed by the trust instrument so to do, a trustee should not indefinitely hold unproductive or wast-

ing securities. A trustee, standing as he does between the life tenant and remainderman, must not favor one at the expense of the other. Nevertheless, it may at times be impossible, without great loss, to convert unproductive assets into cash for reinvestment without considerable delay, but when a conversion is made the life tenant is entitled to receive a portion of the proceeds to recompense him for the loss of income suffered in the meantime. If at the time of the testatrix's death it had been settled law in this State that stock dividends were not income, it would have been the duty of the trustee to sell the securities in question and reinvest the proceeds in income-producing property. Loring, A Trustee's Handbook, 4th ed. pp. 127-128; Bogert on Trusts, § 101 p. 364; Perry on Trusts, § § 439, 440. It is now the duty of the trustee, after giving due consideration to the condition of the market for these securities, to sell within a reasonable time. However, the trustee must necessarily have considerable discretion in determining the proper time to sell.

How shall the proceeds be apportioned?

There being nothing in the will to indicate a contrary intention, it will be presumed that the testatrix intended that from the date of her death her husband, the first life tenant, should receive the income. *Edwards* v. *Edwards*, 183 Mass. 581.

As to the fund of $8,423 received by the trustee on or about September 26, 1929 for fifty shares of the North American Company, the trustee should ascertain what sum of money, if placed at the death of testatrix in trust at the rate of interest which said sum, if properly invested, would have earned as trust funds in income-producing investments, would have produced $8,423, the amount realized on the sale. The sum so ascertained is capital. The difference between said sum and the amount received for the stock sold is income to be paid to the life tenant. Whenever the trustee shall make a sale of other shares of the stocks in question the proceeds should be apportioned in the same

manner. The principles involved were first applied in *Howe v. Earl of Dartmouth,* 7 Ves. 137. These principles were applied by this court in *Greene* v. *Greene,* 19 R. I. 619 and recognized in *R. I. Hospital Trust Co.* v. *Bradley,* 41 R. I. 174. See also *Edwards* v. *Edwards,* 183 Mass. 581; *Ogden* v. *Allen,* 225 Mass. 595; *Lawrence* v. *Littlefield,* 215 N. Y. 561; *In re Pinkney,* 208 App. Div. 181, 202 N. Y. Supp. 818, Affd. 238 N. Y. 602; *In re Hopkins Estate,* 233 N. Y. Supp. 326; *Furniss* v. *Cruikshank,* 230 N. Y. 495.

As to the shares not sold, we cannot agree with the contention of the life tenant that he is entitled to receive, at regular intervals until they are sold, interest at 6% on the inventory value of said shares. It is clear that such procedure might result in turning over to the life tenant, in addition to proper income, a large amount of the capital, which of course must be retained for the ultimate benefit of the remaindermen, and a very practical objection is that the trustee has no funds from which to pay such interest. The authorities cited do not support the contention.

Our conclusions have been above set forth and the trustee is advised accordingly.

*Tillinghast & Collins, James C. Collins, Colin MacR. Makepeace,* for complainants.

*Comstock & Canning, John E. Canning, William A. Graham,* for John H. Tucker, et al.

*Thomas F. Black, Jr.,* for Henry E. Wilson, Jr., and as guardian *ad litem.*